Good morning, Your Honors. I'm Valerie Ross, for appellant, and I'm here with my co-counsel Cabral Bonner and Charles Bonner of Bonner & Bonner. If it pleases the Court, I would reserve five minutes for rebuttal. To answer the question the Court directed, the Supreme Court would follow the preclusion holding of Tazewell because Tazewell bases its holding on the holdings of other Supreme Court cases where the Supreme Court determined it was contrary to the intent of the legislature regarding certain whistleblower statutes to give preclusive and binding effect to the administrative findings in a later judicial proceeding under the statute. However, the Labor Code Section 1102, which plaintiff brings his action under, was also at issue in Tazewell, and that has not been examined by the Supreme Court as to the issue of preclusion and the binding effect of an administrative finding. In the Campbell case, it did examine 1102.5 on the issue of exhaustion of administrative remedies and determined that the exhaustion of administrative remedies is required. So the question is whether the Supreme Court would follow Tazewell in regard to 1102, and that would be answered. I'm wondering why the administrative exhaustion question is pertinent. I didn't hear you. Why the administrative exhaustion question is pertinent. Why is it pertinent? Yes. Well, I don't think it's really pertinent to this decision, but it is part and parcel of this entire issue. The administrative exhaustion is required in the cases that the Court cited, the Supreme Court cases that the Court cited. What you're basically saying is the fact that administrative exhaustion is required under Campbell doesn't distinguish this statute, 1102.5, from the ones in the Supreme Court cases. Oh, no. That was also a required administrative exhaustion. Oh, yes. Oh, yes. Oh, yes. No, no, no. And so we're just dealing with whether or not the case would be followed as to the issue of exhaustion of judicial remedies. Well, the district judge and your opponent rely primarily on the Murray case to the contrary. So what about that? Well, the Murray case is, in my opinion, not relevant because the Murray case deals with the issue of exhaustion of administrative remedies. The appellant there failed to follow through with the administrative directive of the airline. And in fact, they didn't even approach the administrative findings. It was just an initial investigation by a federal authority. But the conclusion was a preclusion question, not an exhaustion conclusion. I'm not hearing you. The conclusion was a preclusion conclusion, not an exhaustion conclusion, right? The issue in the case was whether the initial administrative proceeding was preclusive, factually preclusive. Well, not the administrative proceedings, but the findings of the federal authority. Well, isn't the main difference that in Murray, the court said that they thought Congress intended for preclusion to apply. And so the question here would be a different question, which is whether the California legislature had a similar or different intention with respect to preclusion. So, I mean, it's relevant in the sense that it looks at the same question. What did the legislature intend? But that doesn't mean the answer is the same. Well, Murray can be distinguished by the fact that, factually distinguished, in that the appellant, the case only got so far. The investigation, the federal investigation was as far as they got. And that was the question that was certified to the California Supreme Court, not whether the full administrative hearing that would have followed had Murray pursued it. I can't tell if you answered Judge Graber's question, but I think she's trying to get at whether or not we need to be concerned about whether the California legislature intended a different result in these whistleblower cases. Well, I think that as far as 1102 goes, it's a similar statute to the ones that were treated in the Runyon and Arbuckle and Fallon cases. What should we conclude from that? That the Supreme Court found that requiring exhaustion of judicial remedies flew in the face of the object of... So that the whistleblower action wasn't precluded? Is that what you're trying to get at? Yes, absolutely. That it presented too many roadblocks, and as Fallon described, it is nearly impossible for an employee to overcome the findings of an administrative body in a writ of mandamus. Everything's against him. And the purpose of the whistleblower statute is to protect the whistleblower so that the whistleblower can... That whistleblower and other whistleblowers... So maybe I could put it this way. There's a lot of instances where there are administrative proceedings that are quite exhaustive and have a lot of judicial characters to them, and everything, as you put it, is against, to use your words, the litigant going forward and their actions are precluded. This is a different kind of action because it's a whistleblower action, at least I think that's what your brief argues, or that's your position. And so what I'm trying to get at is there are sort of references to... And what I'm concerned about, because I think that's what the legislature is concerned about, is that the whistleblower action should not be precluded. It should be allowed to go forward because there really isn't an opportunity to litigate it earlier. So my question is... That's an overgeneralization, but I'm trying to get to where I want to go here. My question is there are indications in the record from opposing counsel that your client was able to make his whistleblower allegations and litigate them in the administrative proceeding. Do you want to respond to that? Yes. Throughout the administrative proceeding, the county hid from us the fact that all along during those many months, the county was actually in the M case, which gives rise to the appellant's action, obliterating his name from the record of the M children. It did not come up, I thought. What's that? I thought it did not come up during the administrative proceedings. It did not. It did not. And what I'm saying is that... But isn't the larger problem that the administrative proceeding, there is one sentence, one paragraph on this point, which says, In his opening statement and several times during the hearing, the appellant accused the department and county of terminating him as retaliation for filing a petition of complaint in 2012 and for his alleged union organizing activity. In other words, not for this, not for the M case. And then he says that that wasn't it, but the opinion never says anything about retaliation for the M case. There is no finding in the opinion about retaliation with regard to the M case, is there? That the, that's what the hearing officer found. Not with regard to the M case, though. He says nothing about the M case. So he didn't litigate. If he litigated it, he didn't get a response to it. But all the while, we had no idea what the county was doing in the background, which is... But I don't think this is a trick question. I think the point is that you didn't get the ruling on your retaliation claim. Isn't that your point? Well, yes, but isn't that the case with each one of these Supreme Court cases? That it was an adverse ruling. But it wasn't an adverse ruling, is the point. There was no ruling in this, in the, well, I mean, if you want to say there was one, fine, but I can't find it. The only, I see a ruling with regard to whether it was retaliation for filing a petition of complaint in 2012, which was not this, and for his alleged union organizing efforts, which was not this. So I don't see any ruling in the administrative proceeding with regard to retaliation on the M case. The appellant was terminated because he gave a list to the... In the ALJ proceeding. It was litigated. It was. Okay, you want to say it was litigated, fine. It may have been litigated, but you didn't get a response to it, which is the stronger position for you, not the weaker position. And the last part again? I didn't get it. I'm sorry. You have a minute and 28 seconds. Do you want to reserve time? I would just point out that the Supreme Court would follow the same procedure that they did in the other cases and apply that procedure to determining whether 1102.5, the legislature intended that there be preclusion for failing to pursue the judicial remedies. And the cases are clear that where there is a part of the statute that authorizes a civil lawsuit for damages for retaliation, then the courts have found that the requirement of pursuing the judicial remedy is not intended by the legislature. And they would find that in regard to 1102.5. It also provides for a civil suit for damages. And without regard to what occurred at the, that's what preclusion is, that it's not required. Okay. Without regard to what happened at the administrative hearing. All right, your time is up. Thank you very much. We'll give you a minute, Roberta. Thank you. Thank you. Good morning. May it please the court, my name is Susan Coleman and I represent the county and Ms. Burgamy and Ms. Hackett in these proceedings. In response to the court's question about whether the California Supreme Court would follow TASWELL, our position is no, it would not follow TASWELL. What's the standard that we follow? Isn't it more than just we doubt it? It's kind of a, we have to have a pretty good reason for thinking, is it clearly wouldn't or some language like that? What's the standard by which we can determine not to follow a very recent, in this case, state court of appeal opinion? What do we have to believe with regard to this California Supreme Court? Well, it's a California court of appeal decision. So if there's Cal Supreme findings that are contrary and lead us to a different result, then that's what you follow. Well, but the point I think that Judge Berzon is making is that ordinarily we are required to follow a court of appeal decision of a state on a question of state law unless we're convinced that the Supreme Court would have a different result. So why are you convinced that the Supreme Court would have a different result? And if I can amend that, because we know that every time they have looked at a California whistleblower statute, they have specifically come to the conclusion contrary to the one you're advocating for. With all due respect, Your Honor, Murray specifically looked at whether there was preclusionary effect. But it's not a California whistleblowing statute. Every time they've looked at a California whistleblowing statute. That's our concern. At least that's my concern. I don't want to speak to others. That's my concern. But it looks to the Supreme Court 11- And when you're talking about Murray, would you respond to the point that I was raising with opposing counsel, which is what the court looked at is what did the legislative body that was in question have in mind? And in that case, it was Congress in some other context entirely. So I don't even understand how that bears on the question whether the California legislature had a particular intent with respect to the whistleblower statute and how the court would rule about that. So that seems apples and oranges to me. Well, in Tazewell, the main focus was on the language of 8547 under the government code. And that specifically says that if a person is dissatisfied, they may go to civil litigation. Whereas 1102.5 doesn't have that same language. And to say that we should infer that because it's a whistleblower statute, it would go the route of Tazewell ignores in Johnson, another Cal Supreme Court case that dealt with FIHA litigation. But the administrative finding was binding there because of the policies. And here we have very strong policy reasons to hold that there's perclusive effect. But the problem is what the regime, as I understand it, that you're arguing for, is that you're supposed to take an administrative mandamus proceeding from the administrative decision, in which damages are not available, right? Fact pay would be available with reinstatement. But damages would not be available, ordinary damages. And in which you have an extremely deferential standard. The court is not going to, and there's not going to be a trial hearing in that court, right? Correct. So the net result is that what you have is not a judicial determination of whether there was retaliation. And thirdly, the focus of the administrative proceeding, and some of the California cases talk about this, is really on just cause, i.e., was there a basis for discharging him? And that's what this whole opinion, you know, very lengthy opinion is about. Did he do this? Did he do that? Did he do that? Which is a different question from the one that he's trying to raise in the whistleblower case, right? So you have a mismatched proceeding. And you're arguing that the California legislature, that the California Court of Appeal was wrong in concluding that the California legislature didn't want that and wanted an all-new proceeding on the whistleblower issue. That's your basic argument. So then what? He would then bring a damages action after? Suppose he won, then what? If he won, then he could bring a damages action after. Wouldn't it be a limitations period problem? When what? A limitations period problem. The statute of limitations? No, because you have to exhaust that administrative process in order to... No, not the administrative process, the judicial process. You're arguing for a judicial exhaustion as well as an administrative exhaustion. Right. Right? He specifically advised that he should take that if he wants to exhaust the process. So in terms of the statute of limitation, that should stay in the process, similar to the whistleblower grievance process in the UC system, that that stays the process for the civil litigation. But the Tazewell case, since it dealt with the UC system, the hearing that was given there was by a dean within the university. Here we have an administrative law judge. What difference does that make? Well, arguably someone who is associated and employed by the UC is not an impartial person. Here we had an administrative law judge that was mutually selected by the parties. There were 14 days of hearings. I was very exhaustive, and the idea of repeating this is not something I think we take lightly. But what I'm trying to figure out, going back to Judge Graber's question, whether there was intent by the legislature that this should be precluded, that a whistleblower claim should be precluded. And it seems to me that in the wrongful, I'm going to call it wrongful termination, just the termination action, the employment action. I'm not so sure that there really was much litigation, that it's really even within the scope of what was happening there, and there certainly wasn't much of a decision didn't really focus on that. So I'm concerned that the legislature, because the indications in the other case law is that they want to make sure whistleblower cases get heard. What's your best assessment? Right. Well, with regard to that, this issue was exhaustively discussed below. Below? You mean in the administrative proceeding? In the administrative proceeding. Where? I couldn't find it at all. Okay. So the issue is sometimes when there's minors, we use the last initial, and then here this is also the M case is the same as the Rodriguez people who. Well, yes, they concluded that he did what they said he did, but they didn't conclude anything about retaliation as to that issue. In other words, you can do something wrong and still be retaliated against because they wouldn't have brought the action against you if they weren't retaliating, right? But there were a lot of discussions about whether it was, in fact, protected activity. Where? Not in the administrative law judge's conclusions. There's none. It's in the record below in the administrative hearing. But he didn't decide it at all. Well, there was a lot of discussion. Fine, but he didn't decide it at all, presumably because he didn't think it was really there. He asked questions at the hearing. Fine, but he didn't decide it at all. So I'm not trying to make your life difficult, but I have a concern about this precedent in both ways because there's a real concern about judicial inefficiency as well, right? But it's not hard to imagine a circumstance where somebody gets terminated and after even an exhaustive procedure with a lot of judicial formality it's determined that the employer had cause to terminate that person, but that person should have been able to show that for the very same infraction other folks weren't terminated and that this was in retaliation, for example. You understand what I'm saying? So the whistleblower violation doesn't really get heard. That's his allegation that there was a real problem in the system where these children, you know, the report was made. I don't need to go into all those details here. But there's actually a safety issue. That's what whistleblower allegations are about. That's why they're so safeguarded. Yes, Your Honor, and Mr. Barrow was not precluded from exhaustively raising any issue that he had with the termination, with his reporting of the list, and there were questions from the judge about, well, wasn't it known that if you typed in Rodriguez wrong with a Z instead of an S that you wouldn't get the same result, in other words, suggesting that wasn't protected activity to disclose this glitch in the system, as he refers to it in his appellate brief. And so he was able to, you know. Did he get a ruling that he wasn't terminated in retaliation for these misdeeds? That's my word, right? I'll just use misdeeds. Where is that ruling here? Well, we don't see it on the court's written order specific to this issue on the M family or the Rodriguez issue, but you can infer, you can potentially infer that the judge found the county would have made the same decision anyway, in which case you reach the same result. We can infer the county would have made the same decision to terminate him even if what? Even if there was some retaliatory intent, in other words, the same decision affirmative defense, because there was good finding, there was, the judge did find that there was good cause to terminate him. So a jury would be given that instruction whether. Can we go back to the question of Tazewell squarely decided this question, right? And you're asking us to disregard its holding in the face of the fact that it relied on several California Supreme Court cases in coming to its conclusion. How and why should we do that? First of all, Tazewell focused primarily on 8547. Primarily, but it did make this ruling, right? It reached this question and it ruled on it. And it ignored Murray completely. It didn't address that Cal Supreme. Well, it didn't because it's not relevant. That was my question to you. Since it was dealing with congressional intent and not the California legislature's intent, it seems entirely beside the point. So the fact that they didn't cite it seems to me to mean nothing at all. In fact, it's what you'd expect, isn't it? Well, the question certified to the Ninth Circuit didn't discuss intent of the legislature or of Congress. Isn't it also true that at least one of the decisions did? But the decision did. This California Supreme Court's decision did. That was part of its reason for the answer. It gave an answer because it viewed congressional intent as being something in particular. And so it just seems, well, I'm repeating myself. I'm sorry. It seems unremarkable to me that it is not cited in Tazewell. Also, wasn't Fallon decided after Murray? Tazewell was decided after Murray. Fallon. Fallon. Yes, it was, four years after. I'll defer to the court on that. So, therefore, if Tazewell is trying to figure out what the California Supreme Court might think about this and it went to a more recent case about California law rather than an older case about federal law, does that seem like an appropriate way to decide something? Well, it may be binding on 8547, which it really got into the legislative intent on that statute, but it gave very short shrift to 1102.5, and that's the statute here. It also looked at the incorrectly considered availability of damages, whereas in both Murray and Johnson, the court knew that there was damages available and still found preclusive effect. And here in Johnson, if this case was sent back, it would ignore the policies expressed in Johnson to minimize repetitive litigation, avoid harassment of the parties. We would have likely a five-day trial in federal court, what was 14 days. But you need, because this particular issue was not decided by the ALJ, you need to be actually arguing claim preclusion rather than issue preclusion, right? Because this issue was not decided by the ALJ. So you've got even a bigger problem in terms of what kind of preclusion you're looking at, right? So you need to be able to say, I don't remember whether Johnson and Murray dealt with issue preclusion, I don't think so. So here you, I mean, claim preclusion, but now you're saying that something that wasn't decided by the ALJ still can't, you still can't bring a lawsuit back. You could also affirm on other grounds supported by the record, and that is that there was no protected activity and that there was no causal relationship between any whistleblowing and any retaliation. And there's no triable issue of fact as to those elements that he would have to prove. We should now decide that even though the district, even though he, this is not the right proceeding for that, right? It was raised in the summary judgment briefing. The judge decided on grounds that there was collateral estoppel and it meets all the elements for that, but it was raised in the MSJA briefing that there was no triable issue of fact as to the elements. So you don't have to decide Tazwell today. You could decide on other grounds. Or we could remand for a ruling on that. You could, Your Honor. Okay. Thank you very much. I'll give you one minute in rebuttal. You're going to have somebody else do the rebuttal? Yes, if it's okay with you. Well, it's unusual. Go ahead. Your Honor, my name is Cabral Bonner. I'm a co-counsel in this matter. And I want to briefly address the issue. One of the issues that came up had to do with what happened at the administrative level and whether or not that was satisfactory, whether or not the legislative intent would be to allow for a separate process, which is an independent lawsuit. And the one factor is 1102.5 is supported also by 1102.6, which has a burden-shifting agreement, a burden-shifting provision. And if, as counsel for county suggests, that they would have made the same decision either way, that would have triggered a heightened burden for the county to make that ruling, which is also not found in the ALJ's hearing. But more importantly, 1102. The point she raised, i.e., does — is there a merit summary judgment proceeding that we should decide now or remand or what? I think you should decide that there is tribal issue effect. I think that if you look at — primarily look at the number of allegations that the county brought against Eric Barra prior to the termination hearing and the number of allegations that are actually sustained, there is case law in point, currently the City of Northern Las Vegas, that stands for the proposition that if an entity throws everything at you and can't prove those things, and some of those things are just — don't pass the smell test, for example. For example, the main issue, that he's fired because he gave a list of children who may have been — who may have been abused to a police officer. That's why he was fired. He gave a list of abused children to a police officer. One of the other reasons he was fired for — Well, one of the problems here is that he was fired for three other reasons, too. Well, but they brought 22 allegations against him. And your point is that they didn't prove all of them. You didn't finish that point. Can you finish that point? My point is, it's not just that they didn't prove all of them. It's that when you — under currently the City of North Las Vegas, when they try that, when they bring out issues that are on their face incompatible with termination, that can be a basis for determining pretext. And that's what we have in this case. They brought 22 allegations, and they proved how many? Four. And the ones that they proved, even the one about giving the letter list of the kids to law enforcement, cannot on its face be a determination for terminating someone. So your, I think, sum-up is that if there's a legitimate non-discriminatory reason, you think there's protected activity, and that there's a question of fact about pretext. Yes. And the timing here was that it was fairly soon after this incident. Very soon. Within what? On June 25th, he provides the list. On July 25th, they hit him with initially nine allegations. He goes out of town. He's not even working. He comes back, and there's 15 more allegations. They then pare it down, and they go to a hearing in August when he hasn't even worked. And all of the allegations are over just a two-week period. All of the actions that they claim he did that should result in him being terminated all happened within a two-week period. None of that passes the smell test. In light of the fact that he makes this determination, it's not a glitch in the system. It's a determination that there's been a fundamental breakdown in how not only people are entering data, but what the supervisors are doing to check that data that results in a Rodriguez with a G versus a Rodriguez with a Q having dozens of kids placed in that home after decertification. And the bigger portion of that, if you look at Jack Anthony's declaration, is the reason they had to fire him was because they had to discredit him, because should the M children sue, the first place they're going to go is to the person who made the determination that it was the county that placed the kids in this home. And if they discredit him by saying not just that he's terminated, but that he's a liar, because all those allegations go to moral turpitude, then when he gets on the stand, they cross his head on him, and they don't pay as much money. Okay. Thank you very much. Thank you both for your arguments. The case of Barra v. City of San Bernardino is submitted, and we are in recess. Thank you very much. All rise.
judges: Graber, Berzon, Christen